**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**F. MICHAEL CUSTER AND MARSHA F. CUSTER**      **CIVIL ACTION**

**VERSUS**                                      **05-739**

**MURPHY OIL USA, INC., F/K/A**                 **SECTION B(3)**
**MURPHY OIL CORP.**

**ORDER AND REASONS**

Before the Court are Defendant's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment.  After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion is **GRANTED**; and Plaintiffs' Cross-Motion is **DENIED**.

*BACKGROUND*

Plaintiff[1] works at Defendant's Mereaux, Louisiana refinery. Plaintiff's benefits are provided by the Group Insurance Plan for Employees of Murphy Oil Corp. (Plan).

The Plan is a self-funded group health plan financed by contributions from Murphy and its nonbargaining unit employees. The Plan is administered by the Employee Benefits Committee (Committee).  The Plan allows the Employer to make changes to any part of the Plan at any time.  As a general rule, Defendant's Employee Benefits Department (Benefits Department) sends out

_____

[1]Plaintiff refers to Michael Custer.  Plaintiffs refers to both Michael and Marsha Custer.

1

notices of the impending open enrollment period in November or December of each calendar year along with additional notices of changes to the Plan design, benefits, copayments, and other changes that might affect Plan participants.

On November 11, 2002, the Committee met to consider changes to the Plan in advance of the open enrollment period.  At that time, benefits payable under the Plan to an employee who was terminated due to total disability could be continued until the employee turned 65 years old.  One of the changes the Committee considered was a change in the continuation until age 65 under the Plan for employees who became totally disabled and were approved to receive benefits under Murphy's Long Term Disiability Plan (LTD Plan) or through Social Security.

The Committee unanimously approved the change and the named fiduciary, Murphy Oil Corporation, approved the change in December 2002.  As a result of the change, totally disabled employees who were approved to receive benefits under the LTD Plan or through Social Security would no longer be covered until age 65.  Instead, said employees would be offered COBRA continuation coverage for eighteen (18) months at active employee rates.  Thereafter, they would also be entitled to elect the eleven (11) additional months as required by COBRA if they qualified.

In November 2002, the Benefits Department sent Murphy's annual open enrollment notice to all active employees, including

Plaintiff at his then-correct address.  The notice stated:

> Medical costs have continued to increase nationwide
> and unfortunately the Murphy Plan has not been
> immune to this problem.  At present, we are still
> reviewing our Plan design and associated cost.  For
> the time being, coverage and premiums will remain
> unchanged.  However, as soon as our review process
> has been completed, we will advise of any changes in
> coverage and/or premiums.

In early December, 2002, the Benefits Department mailed a
notice dated December, 2002, to all active employees, including
Plaintiff, notifying them of various changes to the Plan.  The
notice included the change in continuation coverage for
terminated, totally disabled employees (Plan Amendment), which
became effective January 1, 2003.  The December notice stated in
pertinent part:

**Disability Termination**

> When an employee is unable to work due to an illness
> or injury, medical coverage is continued for a
> period of time at active employee rates while the
> employee is on leave of absence.  When an employee
> is unable to return to work due to disability and is
> terminated due to disability, again our practice has
> been to continue medical coverage for a period of
> time at active employee rates.  Our employment
> practice while on leave of absence will remain
> unchanged, however, should termination occur due to
> disability, our practice will now be that the
> employee will be extended COBRA Continuation as
> required by law.  Murphy will subsidize the COBRA
> premium cost and the employee will only pay the
> active rate for the initial 18 months under COBRA.
> All other terms and conditions under COBRA
> Continuation provisions will apply.

In March, 2003, a new Summary Plan Description (SPD) of the

Plan was mailed to all plan participants.  The SPD included the
Plan Amendment related to Disability Termination described above.
The SPD provides:

> **(3) For Total Disability Termination only:** if a
> covered Employee terminates employment due to Total
> Disability and the Employee is eligible to receive
> benefits under the employer-sponsored Long-Term
> Disability Plan or from Social Security disability
> at the time active employment ceases, coverage may
> be continued under COBRA Continuation, pursuant to
> procedures adopted by the Plan Administrator and
> applied on a basis uniformly applicable to all
> Employees similarly situated.

The SPD explains how COBRA continuation coverage applies to
employees terminated due to total disability as follows, in
pertinent part:

### Maximum Period of Continuation Coverage

> . . .
> (1) In the case of a Qualifying Event that is
> termination of employment or reduction of hours of
> employment, the maximum coverage period ends 18
> months after the Qualifying Event if there is not
> disability extension and 29 months after the
> Qualifying Event if there is a disability extension.

Plaintiff claims he did not receive either mailing.

On November 30, 2004, the Benefits Department notified
active employees by e-mail that the SPD was placed on the Murphy
intranet and that future Open Enrollment information would be
distributed via e-mail to employees with e-mail access; paper
copies would no longer be furnished.  Plaintiff acknowledges
receipt of this e-mail, but not of the previous mailings.

On December 19, 2003, Plaintiff suffered a nonwork-related

injury.  On January 22, 2004, the Benefits Department sent a letter to Plaintiff at his home address that explained how his benefits would be affected by his leave of absence, which began on December 19, 2003.  The letter also advised Plaintiff of his eligibility for accident and sickness benefits and provided him with forms to apply for those benefits.  Plaintiff applied for and received sickness and disability benefits on January 28, 2004, which were effective as of December 19, 2003, in accordance with the Plan as amended.

On May 25, 2004, the Benefits Departments notified and provided forms to Plaintiff to apply for Long Term Disability Benefits under the LTD Plan.  The Benefits Department received and forwarded a set of forms Plaintiff completed to its LTD Plan on July 8, 2004.  Plaintiff's application for long term disability under the LTD Plan was approved effective September 15, 2004, after satifsying the 180-day elimination period under the LTD Plan.

Plaintiff was terminated effective September 30, 2004, as a "Disability/Termination."  His termination was consistent with Defendant's practice of terminating employees who could not return to work due to a long-term disability.  Defendant generally terminates the employment of individuals who have been out of work for at least six months due to a long-term disability that prohibits them from working.

By letter dated October 25, 2004, the Benefits Department

notified Plaintiff of his right to continue benefits under COBRA as set out in the amended Plan.  The Benefits Department also provided Plaintiff with an Election Form, which he submitted on November 1, 2004.  Plaintiff exercised his right to the subsidized COBRA continuation coverage of his medical benefits at active employee rates, and he continuously received medical coverage consistent with the terms of the Plan.

Since the implementation of the Plan amendment at issue in this case, nine (9) Plan participants have been terminated by Murphy due to disability.  Seven (7) of those individuals were in circumstances similar to Plaintiff, and each was treated identically under the Plan.  The other two (2) participant employees were eligible for retirement and received continuing medical coverage under the Plan as "retired" employees. Plaintiff is not eligible for retirement.

### DISCUSSION

ERISA requires that a summary description of material modifications (SMM) to an employee benefit plan must be provided to all plan participants not later than 210 days after the end of the plan year.  *See* 29 U.S.C. §§ 1022(a), 1024(b)(1); 29 C.F.R. §2520.104b-3(a).  The plan administrator must provide a summary description of a "material reduction"[2] not later than sixty (60)

---

[2] Material reduction is defined as any modification to the plan or change in the information required to be included in the summary plan description that, independently or in conjunction with other contemporaneous changes, would be

days after the date of the adoption of the modification or change.
*See* 29 U.S.C. § 1024(b)(1); 29 C.F.R. §2520.104b-3(d)(1).   The
regulations promulgated under ERISA only require that the plan
administrator use whatever means are "reasonably calculated to
ensure actual receipt of the material", which specifically include
sending the material by first class mail.   *See* 29 C.F.R. §
2520.104b-1(b)(1); *see Williams v. Plumbers & Steamfitters Local
60*, 48 F.3d 923, 926 (5ᵗʰ Cir. 1995).   ERISA does not require that
Defendant establish actual notice to satisfy its burden, absent
evidence of active concealment or some significant reliance upon or
prejudice resulting from the lack of notice.  *See Williams*, 48 F.3d
at 926.

      ERISA and its pertinent regulations explicitly allow sending
notice of the Plan Amendment by first class mail.  *See* 29 C.F.R. §
2520.104b-1(b)(1).   Under the "mailbox rule" that federal courts
apply in cases involving adequate notification of COBRA benefits,
a rebuttable presumption exists that a properly addressed and
mailed document is received by an addressee. *See Schikore v.
BankAmerica Supp. Retirement Plan*, 269 F.3d 956, 961-62 (9th Cir.
2001); *De Simone v. Siena College*, No. 90-1058, 1991 U.S. Dist.

---

considered by the average plan participant to be an
important reduction in covered benefits or services under
the plan.  *See* 29 C.F.R. §2520.104b-3(d)(3).
The Court does not need to address whether the change was a
material modification or a material reduction because
Defendant complied with the material reduction disclosure
period, which would satisfy either statutory requirement.

LEXIS 5529, at \*7-\*8 (N.D.N.Y. Apr. 24, 1991) (finding a rebuttable presumption can be created by direct evidence of a mailing or mail sent pursuant to office procedures followed in the regular course of business).   The mere denial of receipt does not rebut the presumption created under the "mailbox rule," nor does such denial create a question of fact regarding receipt.  *See De Simone*, 1991 U.S. Dist. LEXIS 5529, at \*7.  The *De Simone* approach is consistent with relevant Fifth Circuit precedent.  *See Ehlmann v. Kaiser Foundation Plan*, 198 F.3d 552 (5th Cir. 2000).  In *Ehlmann*, the Fifth Circuit held the district court correctly dismissed a claim for breach of the duty to disclose when ERISA imposed no such duty. *Id.* at 555.  The Fifth Circuit noted it was for Congress "to determine whether to impose such a duty to disclose under ERISA and this court will not encroach on that authority by imposing a duty which Congress has not chosen to impose."  *Id.*   Accordingly, the Court adopts the rule articulated in *De Simone* as the applicable standard here.

Based on the undisputed material facts, Defendant followed its regular procedures in mailing notice to all of its eligible Plan participants, including Plaintiff.[3]  The Benefits Department mails out notice of changes to the Plan during the open enrollment

---

[3]Plaintiff argues unpersuasively on this point, noting Defendant failed to follow its "normal" procedures when it briefly delayed the mailing so that Defendant could determine whether the changes recommended would be adopted.  This is not a material change to the actual mailing process.

period, and the notifications normally are sent out in the months

of November or December preceding the affected Plan year.

Plaintiff recalled receiving notifications of other changes to the

Plan, such as premium increases, in other years.

Ronald Smith ("Smith"), Defendant's Benefits Manager, along

with his staff, personally placed the notices of the 2003 Plan

amendment in the envelopes and delivered them to Defendant's mail

room.  On direct questioning by Custer's counsel, Smith testified:

> Q.   Okay.  Let's go to that subject.  Tell me why you
> say you know it was put  in the mail.
> A.   Because I shut down my department on all mass
> mailings, including myself, we stuff them all together
> as a group, so I know it was done.
> ...
> A.   My department did the stuffing.  The mail room did
> the mailing.

The mailing list that the Benefits Department used to address the

envelopes included Custer's then correct address.  Affidavits from

Alissa Wilson, Benefits Analyst with Defendant, and Kristi Saulsbury,

Supervisor of Mail Services for Defendant, support Smith's

statements.  Smith further testified that he was aware of some

employees, including himself and members of his department, who

received the notice.

Plaintiff attempts to rebut this evidence by his own testimony

that he did not receive any of Defendant's mailings with respect to

the change at issue in this case.  As support, Plaintiffs offer the

testimony of three other Plan participants. Plaintiffs claim the

testimony of these three other Plan participants unequivocally prove

they did not receive any of Defendant's mailings with respect to the change at issue.  A thorough reading of the depositions reveals that all three testified that they did not *recall* receiving the notice. Their inability to locate the notice at issue in their files does not alter the material facts as presented here, i.e. that the notices were mailed according to Defendant's normal procedures.

Plaintiffs raise a more compelling point regarding Defendant's affidavits.  Plaintiffs contend the affidavits are not from the individuals who were actually responsible for doing the mailings on a daily basis.[4]  The two people responsible for doing mailings on a daily basis are Anthony Yarborough and David Kilby.  Since these Motions were filed and arguments heard, the parties jointly interviewed Yarborough and Kilby.  Yarborough and Kilby are unable to provide direct evidence in favor of either side.  Both stated they meter envelops containing communications from the Benefits Department, but cannot provide any direct information about the December 2002 mailing.  However, given material evidence that a mailing was done according to normal procedures and no material evidence to the contrary, Defendant has satisfied ERISA's notice requirements.

Defendant initially informed employees that changes may come

---

[4]Plaintiff is less convincing in his argument that the White and Saulsbury affidavits should be stricken.  It was Plaintiffs' own arguments in its reply brief that necessitated Defendant's response and inclusion of these affidavits.  Given the wide-latitude Plaintiffs have enjoyed in time-limits for their own filings, Defendant should be allowed some latitude in rebutting those arguments.

in its announcement of the open enrollment period, dated November,

2002.   Defendant specified in its notice mailed in December, 2002,

that the Plan was implementing changes to its medical coverage.   In

one subheading, the notice specified:

> When an employee is unable to return to work due to a
> disability and is terminated due to disability, again
> our practice has been to continue medical coverage for
> a period of time at active employee rates.   Our
> employment practice while on leave of absence will
> remain unchanged, however, *should termination occur due
> to disability* our practice will now be that the
> employee will be extended COBRA Continuation as
> required by law.

(emphasis added).   Plaintiffs' Memorandum focuses on the use of the

word "practice" rather than "change" in the first mailing, however

in context, with this paragraph appearing under a subheading

identifying changes to the medical plan, it is clear that a change

was indicated.   Any employee reading this statement under the

heading "Medical Plan Changes" would have had clear notice that a

change in disability coverage was imminent.   The average employee

would know that change affected medical coverage in the event of

disability.   Therefore this Court finds Defendant's disclosure was

adequate under ERISA.

Having concluded Defendant's notice satisfies ERISA disclosure

requirements, Plaintiffs can only recover if they can show active

concealment, significant reliance, or prejudice resulting from the

lack of notice.

Under Fifth Circuit case law, "an amendment to a welfare

benefit plan is valid despite a beneficiary's lack of personal
notice [under section 104], unless the beneficiary can show active
concealment of the amendment or some significant reliance upon or
possible prejudice flowing from the lack of notice."  *Godwin v. Sun
Life Assurance Co. of Canada*, 980 F.2d 323, 328 (5th Cir. 1992)
(internal quotations and citations omitted).

   Prejudice has been found when a plaintiff testified he would
not have given notice of his intent to leave the company if he had
known of a Plan amendment that called for benefits forfeiture upon
early resignation or retirement.  *Hillis v. Waukesha Title Co.*, 576
F. Supp. 1103, 1110 (E.D. Wisc. 1983).  Plaintiff in the instant
case presents an affidavit asserting he would have obtained private
health coverage for both he and his wife had they been aware of the
Plan change.  Plaintiffs could have then obtained insurance
coverage for both without the burden of Mr. Custer's preexisting
injury.  Insurance coverage for Mrs. Custer alone would far exceed
the premium paid under the group plan.

   Plaintiffs offer a single self-serving statement to support
their claim of substantial reliance/prejudice.  Plaintiff's
affidavit includes a statement that he has reviewed an affidavit
regarding the premium cost of medical insurance for he and his
wife.  It concludes that based on their current living expenses,
anticipated increases in medical costs, and Plaintiff's fixed
income, the costs of medical coverage would be prohibitive.

   As noted by another Judge of this Court, "Self-serving

affidavits employed to create material facts should be carefully

scrutinized by the court. The Fifth Circuit has held that

unsubstantiated assertions are not competent summary judgment

evidence.  Likewise, mere conclusory allegations are not competent

summary judgment evidence and are insufficient to overcome a

summary judgment motion." *Sorina-Washington v. Mobile Mini, Inc.*,

No. 03-3643, 2005 U.S. Dist. LEXIS 1292, at *7 (E.D. La. Jan. 27,

2005).

Plaintiff offers testimony he would have obtained supplemental

medical coverage to compensate for the reductions in coverage

proposed by Murphy.  The testimony relies upon the benefit of

hindsight and information from an expert on the anticipated medical

costs.  It is impossible for Plaintiff to prove this is actually

what he would have thought/done at the time with all information

available then.  Conclusory allegations are not competent summary

judgment evidence to overcome the instant motion on this point.

Plaintiffs further argue that any notice of a Plan change that

fails to detail the material changes constitutes "active

concealment."  In so arguing, Plaintiffs rely on a Third Circuit

case in which the change in benefits was announced in the middle of

a 62-page notice of (shareholders') meeting.  *Lettrich v. J.C.*

*Penney Co., Inc.*, 213 F.3d 765 (3d Cir. 2000).  In advancing this

argument, Plaintiffs focus on the SPD and ignore Defendant's

earlier distribution of the December notice, which highlighted

13

changes to the Plan.[5]   Given Defendant's prior notice, the Court

does not find Defendant actively concealed the change to Plan

coverage.

Plaintiffs next allege that Murphy intentionally interfered with

Plaintiff's ERISA rights by terminating his employment.  To establish

a claim for discrimination under Section 1140 of ERISA, an individual

must demonstrate that the employer acted with specific intent to

interfere with the individual's attainment of ERISA benefits.  *See*

*Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 260 (5th Cir.

2001); *Royers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 761 (5th

Cir. 1996); *Hines v. Massachusetts Life Ins. Co.*, 43 F.3d 207, 209

(5th Cir. 1995).  Plaintiffs are unable to satisfy their burden.

Plaintiff was terminated because he was no longer qualified for

his position at Murphy due to his disability.  This undisputed fact

renders him unable to prove a prima facie case of discrimination

under ERISA.  *See Holtzclaw*, 255 F.3d at 261 (finding that plaintiff

could not establish a prima facie case of discrimination under ERISA

because he was no longer qualified for his position due to a medical

condition).  Plaintiff, much like the plaintiff in *Holtzclaw*, was

medically determined to be unable to return to work, and he began

---

[5]Further, Plaintiff ignores *Lettrich*'s subsequent history,
in which case the district court concluded the announced changes
did not constitute active concealment, which the Third Circuit
affirmed.  *Lettrich v. J.C. Penney Co.*, 90 Fed. Appx. 604 (3d
Cir. 2004).

receiving long term disability benefits under Defendant's LTD Plan. Thereafter, Defendant terminated Plaintiff in accordance with its normal policy.  Defendant terminated nine other individuals for the same reason after the Plan Amendment was implemented.  Plaintiff has not come forward with any evidence to demonstrate that Defendant harbored any intent to interfere with his rights protected under ERISA.

Plaintiff cannot prove that Defendant's reasons for terminating him are pretextual.  Defendant's actions were consistent with company policy and were motivated by business concerns and not with a specific intent to interfere with Plaintiff's benefits.  The only reason Plaintiff was terminated was because he was no longer able to work at Murphy.  He was approved for long term disability benefits, and he was not going to return work.  There is no proof Defendant was motivated by anything other than this fact.

Plaintiffs argue that Murphy "retroactively" terminated Plaintiff's employment to deprive him of his benefits.  This argument is baseless - by Plaintiff's own admission, Murphy advised him of his termination only one day after his termination was effective.  *See* Exhibit 2 to Defendant's Memorandum in Support of its Motion for Summary Judgment, pp. 133-34, 164.  Furthermore, Section 1140 of ERISA is focused on intent and not effect.  Plaintiffs cannot prove that Plaintiff was deprived of any benefits to which he was entitled under the Plan.

15

Under § 510 "changes in one's employment status cannot stem from benefit-based motivations." *Teumer v. General Motors Corp.*, 34 F.3d 542, 545 (7th Cir.1994).  Thus, ERISA Plan changes, written to prevent employees from enjoying benefits about to vest, are not prohibited by § 510, but a discharge so motivated is.  Plaintiffs argue that using the practice of terminating employees after they have become disabled, thereby depriving them of vested coverage until age 65 under the explicit terms of the Medical Plan, violates ERISA. Plaintiffs argue the effect of this arbitrary decision was to deprive Plaintiff of his vested benefits.

Plaintiffs cite *Lindemann v. Mobil Oil Corp.* and *Teumer v. General Motors Corp.* to support their position.  Neither case assists Plaintiffs.   In *Lindemann*, an employee terminated for absenteeism lost benefits.   Lindemann argued her use of short-term disability benefits in connection with these absences resulted in her termination.  The district court was not persuaded and found nothing in the evidence presented at trial to suggest the employer's motive was based on the use of benefits rather than the actual absences themselves. *See Lindemann*, 141 F.3d 290, 295-96 (7th Cir. 1998).   In *Teumer*, Teumer was laid off 3 months prior to certain benefits vesting.   34 F.3d at 545.   The *Teumer* court concluded Teumer failed to allege a proper theory of recovery regarding his claim that defendant's mischaracterized the reduction in force/layoff in order to deprive Teumer of benefits.

16

Here Plaintiff was terminated after it was clear his disability would prevent him from returning to work.  As a result, certain of his benefits were terminated after limits set forth in the Plan. Plaintiffs would have this Court conclude that the practice of terminating employees is done solely to prevent Plaintiff from realizing benefits under the Plan.  Plaintiffs' reading would effectively prevent any employer from changing benefits to reduce those benefits without regard to ERISA's provisions allowing such changes to be made because a court could later conclude such reduction was done solely to prevent a single person impacted by the change from realizing benefits under a benefits plan.

Lastly, Plaintiffs maintain that summary judgment should be denied because a disputed fact exists as to whether the Plan Amendment was formally adopted. The case upon which Plaintiffs primarily rely to support this argument, regrettably, hinders their cause.  *See Slomcenski v. Citibank, N.A.*, 432 F.3d 1271 (11th Cir. 2005)(affirming summary judgment for defendant finding no genuine issue of material fact as to the validity of an amendment to a benefits plan).  A plan amendment that is executed in accordance with the plan's own procedures will be effective.  *See Williams v. Plumbers & Steamfitters Local 60*, 48 F.3d 923, 926-27 (5th Cir. 1995). The *Slomcenski* court, much like the Fifth Circuit in *Williams*, recognized that an amendment to a benefit plan must be executed in accordance with the procedures set forth in the plan.  432 F.3d at

17

1277.   The defendant in *Slomcenski* amended its plan in accordance with the plan's procedures, and it gave notice of an amendment to its benefits plan by way of an SMM.   432 F.3d at 1275.   The amendment was also included in the SPD that was also provided to its employees. *See id*.   The court found that the defendant had complied with ERISA's requirements because the SPD that contained the plan amendment was sufficiently formal to amend the plan.   The court also distinguished *Smith v. Natl Credit Union Admin. Bd.*, 36 F.3d 1077 (11th Cir. 1994), in which the court found that the notices at issue were insufficiently formal to amend the plan pursuant to ERISA, based on the fact that the *Smith* case dealt "with notices 'posted and/or distributed . . . in the customary manner typically used to disseminate employee communications and information,' not with SPDs." *Slomcenski*, 432 F.3d at 1279.

The Plan in effect prior to the Plan Amendment states, in pertinent part:

> **Plan Modification and Amendment**
> The employer's board of directors, its president or the
> Plan Administrator may modify or amend the Plan from
> time to time at its sole discretion.  Participants will
> receive notification of amendments or modifications
> that affect their coverage.

The Plan Administrator is the Employee Benefits Committee.   The Committee met on November 11, 2002, and it approved the Plan Amendment.   The Committee thereafter received approval of the Plan

Amendment in early December 2002.  Shortly thereafter, the Benefits Department mailed out the notice of the Plan Amendment as set forth in the December 2002 memorandum.  The Plan Amendment was also included in the SPD that was mailed to all Plan Participants in March 2003.  Thus, this Court finds Murphy formally adopted the Plan Amendment, and it is therefore applicable and binding on Custer.

Plaintiffs' argument that Defendant failed to adopt the Plan Amendment in accordance with Plan procedures hinges on Defendant's failure to provide certain documents referenced by a deponent during a deposition.  Those documents would bolster Defendant's position.  However, Defendant still has the deposition testimony, which supports a finding that the Plan amendments were properly adopted.  Plaintiffs offer no other evidence that the proper amendment procedures were not followed.  As in *Slomcenski*, Plaintiffs' bare assertion that the proper adoption *may* not have occurred fails to raise a genuine issue of material fact.

Accordingly, and for the reasons stated above,

**IT IS ORDERED** that Defendant's Motion is **GRANTED**; and Plaintiffs' Cross-Motion is **DENIED**.


New Orleans, Louisiana, this 1st day of June, 2006

UNITED STATES DISTRICT JUDGE

19